IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR GONZALES, | : | |
| Petitioner | : | |
| V. | : No. 1:CV-00-2061 | |
| BENJAMIN VARNER, ET AL. | : (JUDGE RAMBO) | |
| Respondents | : | |

## MEMORANDUM IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION

This is a habeas corpus action brought by Victor Gonzales, an inmate incarcerated by the Pennsylvania Department of Corrections. Gonzales alleges that his parole was revoked in July 1998 as a result of Gonzales submitting a urine sample which tested positive for opiates. He now claims that the Pennsylvania Board of Probation and Parole's (hereinafter the "Board") test result was erroneous. Since the revocation, Gonzales alleges that the Board has relied upon the false information to deny him re-parole from prison.

## STATEMENT OF RELEVANT FACTS

Victor Gonzales was granted parole by the Board from a ten to twenty year sentence for Burglary and released from custody on February 23, 1998. See Exhibits 1-2. As a condition of his parole, Gonzales submitted a sample for urinalysis testing on April 15, 1998. See Exhibits 2-3, 5, 7. The sample tested positive for opiates. See Exhibits 5,7.

Gonzales was arrested on April 30, 1998 on a Parole Board Warrant to commit and detain him based upon the positive test result. See Exhibits 3-4. Gonzales was provided a hearing on the parole revocation on June 17, 1998 at the Lehigh County Prison. See Exhibit 10. At the

Hearing, Gonzales was represented by counsel. See Exhibit 6. Gonzales had the opportunity to have the hearing conducted by a panel of Board members but waived that right and agreed to have the hearing held by a hearing examiner. See Exhibit 6.

During the parole revocation hearing, Parole Agent Denton testified and entered into evidence the record of a urinalysis report indicating that on April 15, 1998, Gonzales rendered a urine sample positive for opiates. The sample had been retested and confirmed by gas chromatography. The Parole Agent also testified that a representative of the Board's approved lab, Scientific Testing, had informed him that eating poppy seeds would not have produced a positive sample. The Parole Agent further testified that Department of Corrections records indicate that Gonzales had previously reported use of amphetamines. See Exhibit 10.

Gonzales also testified at the hearing and claimed to have not used drugs of any type. He testified that he had eaten poppy-seed bread at Easter dinner. See Exhibit 10. Gonzales' counsel produced evidence from a hair sample analysis from a two-centimeter sample obtained from Gonzales on May 28, 1998 and processed by the American Medical Laboratories which did not detect the presence of opiates in Gonzales' hair. Counsel also presented argument about the effect of poppy seeds on urinalysis and other related arguments. See Exhibit 9-10.

Following receipt of the evidence, the hearing examiner found a technical violation of parole based upon the testimony of the parole agent. See Exhibit 10. The Board ordered Gonzales recommitted to a State Correctional Institution as a Technical Parole Violator to serve 5 months backtime and to review him for re-parole in September 1998. Since that time, Gonzales has been reviewed for parole and denied parole three times. See Exhibit 11-14. Each time he

has been denied parole, the Board has determined that the fair administration of justice cannot be achieved through Gonzales' release on parole. See Exhibit 11-14.

Gonzales sought administrative relief of the parole revocation in September 1998. The Board denied relief to Gonzales, stating that "Questions of resolving conflicts in the evidence, evaluating witness credibility and assessing evidentiary weight are within the discretion of the Board as the fact-finder. See Exhibit 15-16. Gonzales did not appeal the denial of administrative relief.

On or about September 5, 2000, Gonzales filed a Petition for a Writ of Mandamus to the Pennsylvania Commonwealth Court seeking injunctive relief directing that Gonzales be paroled from custody. See Exhibit 17. On September 8, 2000, the Commonwealth Court issued an Order denying the Petition on the bases that the decision to parole is discretionary and not subject to mandamus. See Exhibit 18. Gonzales did not appeal the Commonwealth Court's decision to the Pennsylvania Supreme Court.

## ARGUMENT

Although the thrust of Gonzales' claim is directed toward what he claims was an erroneous determination by the Hearing Examiner in revoking his parole in 1998, the petition for habeas corpus relief is not directed toward the revocation itself. Instead, the petition claims that the Board is relying on erroneous information in denying him re-parole. The "erroneous" information Gonzales complains of, though, is the alleged wrongful drug test result which resulted in his parole being revoked to begin with. He cannot maintain this action.

### I.    Gonzales has not exhausted state court remedies and therefore is not entitled to bring this action for habeas corpus relief.

Absent exceptional circumstances, a state prisoner challenging a state conviction or decision must present his federal constitutional issues to the highest court of the state before he can present the issues through federal habeas corpus. 28 U.S.C. §2254(b), (c); Picard v. Conner, 404 U.S. 270, 275 (1971); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996); Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995) (citing Storey v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994)). The federal habeas claim petitioner wishes to pursue in federal court must have been "fairly presented" to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts. Evans v. Court of Common Pleas, Delaware County, Pennsylvania, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). Although exhaustion does not require that the highest state court actually rule on the merits of the claims, it does require that the court be given the opportunity to do so. Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989).

While a petitioner is not required to exhaust his claims when it would be futile to do so, Doctor, 96 F.3d at 681, the district court should not excuse failure to exhaust as futile unless state law unambiguously forecloses state court review of the claim. Id; Lamber v. Blackwell, 134 F.3d 506, 517-519 (3d Cir. 1997); Toulson v. Beyer, 987 F.2d 984, 987-988 (3d Cir. 1993); Gibson v. Scheidemantel, 805 F.2d 135, 139 (3d Cir. 1986). This is because federal courts risk depriving state courts of an "opportunity to correct their own errors, if any." Toulson, 987 F.2d 989. The habeas petitioner carries the burden of proving exhaustion of all available state remedies. Toulson, 987 F.2d at 987; Gonce v. Redman, 780 F.2d 333, 335-36 (3d Cir. 1985). Further, when some issues are not justiciable in the state courts, never-the-less petitioner must

4

exhaust (or expressly abandon) the issues that can be pursued through the state courts before he can proceed federally. Rose v. Lundy, 455 U.S. 509 (1982). The state courts may entertain a properly presented claim that the Board revoked parole for a reason that expressly violates either the state or Federal constitution or a statute — through an appeal pursuant to 42 Pa.C.S. §763 and 37 Pa. Code §73.1. To the extent Gonzales really is challenging the reason for the revocation, he could have presented his claims to the Pennsylvania Commonwealth Court through an appeal of the denial of administrative relief and then to the State Supreme Court but elected not to do so. He therefore, is not entitled to present his current petition for habeas corpus relief to this Court. To the extent Gonzales did attempt to present his claim based upon the subsequent denial of parole to the Commonwealth Court through a writ of mandamus, he did not appeal that court's decision to the State Supreme Court and, therefore, likewise is unable to maintain this action.

## II. The denial of parole cannot violate the Constitution because Gonzales has no constitutionally protected interest in or right to release on parole.

Gonzales argues that the Board's reliance on the drug test information to deny parole denied him due process and equal protection of the laws. He simply is wrong.

The Supreme Court has made clear that the Fourteenth Amendment does not require due process unless the state interferes with a protected liberty or property interest. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 459-460 (1989); Hewitt v. Helms, 459 U.S. 460, 466-471 (1983). Petitioner here has no protected liberty interest in the possibility of

parole and therefore, no right to due process. Gonzales has no constitutionally-based right to parole under the United States Constitution. See, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979); McCrery v. Mark, 823 F. Supp. 288, 293 (E.D. Pa. 1993). Nor has Pennsylvania created a liberty interest in the possibility of parole. "[U]nder both this court's precedent and the precedent of the United States Supreme Court, the Parole Board's decision to grant or deny parole does not affect an existing enjoyment of liberty. Consequently, appellants fail to establish that they have a liberty interest in parole which is protected by the United States Constitution." Rogers v. Pennsylvania Board of Probation and Parole, 724 A.2d at 323 (Pa. 1999). See generally Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766 (Pa. Cmwlth. 1997); Reider v. Pennsylvania Board of Probation and Parole, 514 A.2d 967 (Pa. Cmwlth. 1986).

While states may create liberty interests protected by the Fourteenth Amendment's due process clause, see Sandin v. Connor, 115 S.Ct. 2293, 2300 (1995), these interests are generally "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,...nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (citations omitted). A decision to not release an imprisoned convict before reaching his maximum sentence does not impose an atypical and significant hardship on the prisoner in relation to the ordinary incidents of a prison sentence. See Orellana v. Kyle, 65 F.3d 29 (5th Cir. 1995). Typically, prison sentences are served in prison.

Pennsylvania courts have consistently held that the Board has complete discretion to parole and that a convict has no constitutionally protected interest in parole. A disappointed

-5-

parole applicant may not appeal the mere fact he has received an unfavorable decision. See e.g., Rogers, supra., Weaver v. Pennsylvania Board of Probation and Parole, supra. It is the Board, and not the sentencing court, that has the exclusive power to grant parole under Pennsylvania law. See Pa. Stat. Ann. tit. 61 § 331.17 (Purdon Supp. 1998).

In this case, the Board followed state law. Pennsylvania law grants the Board unfettered discretion to grant or deny parole. Although Gonzales disagrees with the Board's decision, Pennsylvania law grants the Board the discretion to make these determinations. Their authority is unconstrained by any particularized substantive predicates. See Pa. Stat. Ann. tit. 61 § 331.21 (Purdon Supp. 1998). The Board is only authorized, but not required, to parole a convict. The decision to parole is left to the Board's complete discretion.

The relevant Pennsylvania law gives the Board of Probation and Parole complete discretion to grant or deny parole unconstrained by any particularized substantive predicates. The statute states:

> The board is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby. The power to parole herein granted to the Board of Parole may not be exercised in the board's discretion    at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence... .

Pa. Stat. A. 61 § 331.21 (Purdon Supp. 1998). The Board is only authorized, not required, to parole a convict. Parole is left to the Board's complete discretion. No convict can claim an entitlement to parole.

-6-

Moreover, the Pennsylvania courts themselves have held that the Board has such complete discretion to grant or deny parole that a convict has no constitutionally protected interest in parole. Rogers, 724 A.2d at 322; Dial v. Pennsylvania Board of Probation and Parole, 706 A.2d 901 (Pa. Cmwlth. 1998); Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766 (Pa. Cmwlth. 1997); Reider v. Pennsylvania Board of Probation and Parole, 514 A.2d 967, 971 (Pa. Cmwlth. 1986); King v. Pennsylvania Board of Probation and Parole, 534 A.2d 150 (Pa. Cmwlth. 1987). The district courts have consistently held that Pennsylvania convicts have no constitutionally protected interest in parole. See, Hayes v. Muller, 1996 WL 583180 (E.D. Pa. Oct. 10, 1996); Snyder v. Riggs, No. 96-CV-1569, 1996 WL 103820 (E.D. Pa. March 8, 1996); DeBrose v. Chesney, No. 95-CV-6813, 1996 WL 4093 (E.D. Pa. Jan. 2, 1996).

Nor can Gonzales argue that the Parole Board's actions violate substantive due process. In Watkins v. Horn, 1997 WL 566080 (E.D. PA 9/5/97), when considering a substantive due process challenge to a parole denial, the Court cited that several recent Third Circuit decisions have held in different contexts that a substantive due process claim cannot be maintained in the absence of a constitutionally protected interest. Slip op. at 3, citing DeBlasio v. Zoning Bd. Of Adjustment, 53 F.3d 592 (3d Cir. 1995); Indep. Enters., Inc. v. Pittsburgh Water & Sewer Authority, 103 F.3d 1165 (3d Cir. 1997) and Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1996). The protections accorded by the substantive due process component of the Due Process Clause of the Fourteenth Amendment have generally been applied to matters concerning marriage, family, procreation, and bodily integrity. Albright v. Oliver, 510 U.S. at 271-73; Planned Parenthood of Southeastern Pa v. Casey, 505 U.S. 833, 851 (1992). As set forth above, however, Gonzales has no constitutionally protected right to obtain parole. Nor does the eligibility for parole

-7-

implicate concerns of a fundamental nature such as recited in the <u>Albright</u> or <u>Planned Parenthood</u>. Therefore, Gonzales has no right implicated by the denial of parole which is encompassed within the protections of substantive due process — at least as it is currently interpreted by the Courts.

Parole, by its very nature is the exercise of broad discretion concerning many subjective aspects of the inmate's prior crime, mental characteristics, family history, rehabilitation efforts, current and past behavior. There is no fixed formula for determining when or if parole should be granted. It is in many respects guesswork, based upon predictions of future behavior and analysis of old behavior. As such, while some may disagree about the weight to be placed on various factors, it hardly can be said that the disagreement created by the exercise of broad discretionary authority concerning parole can be of an arbitrary and capricious nature giving rise to a substantive due process violation.

Nor, should Gonzales fare any better by alleging that the reasons given for the parole denials are in any way wrong. If the Parole Board has made any errors in the reasons set forth for the denial of his parole, that is certainly a fact that Gonzales can bring to the attention of the Parole Board during his parole hearing. It is not the basis of a constitutional claim. Nor is it the subject for habeas corpus relief.

Federal habeas courts do not sit to correct errors of fact, but to ensure that individuals are not imprisoned in violation of the constitution. Thus, claims based upon newly discovered evidence have never been held to state a ground for habeas relief absent an independent constitutional violation occurring in the underlying state proceeding. <u>Herrera v. Collins</u>, ___ U.S. ___, 113 S.Ct. 853 (1993). Gonzales does not present a claim establishing a violation of

-8-

constitutional magnitude, however. Instead, he argues that his evidence, which contradicted the Parole Board's evidence of drug usage, somehow cancels the Parole Board's evidence of his wrongdoing. In essence he is doing nothing more that rearguing the evidence at his revocation hearing. This simply is not grounds for habeas relief.

Nor does his petition present a claim under the Equal Protection Clause of the Fourteenth Amendment which directs that similarly situated persons should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985). Gonzales has not alleged nor established that nay similarly situated inmates have been treated differently. Nor would it be appropriate to consider such a claim in this situation. When considering the parole of an inmate, it could rarely be said that two individuals were similarly situated in all respects so as to support an equal protection claim given the broad, discretionary decisions by paroling authorities and the equally broad and varying circumstances of every individual's history, background, characteristics, adjustments, and other factors to be examined in the equal protection context. Watkins v. Horn, 1997 WL 566080 (E.D. Pa 9/5/97)(Exhibit A). Otherwise, federal court's could be called on to pass on every state parole decision simply because another inmate with a conviction for the same crime was or was not paroled. An equal protection claim based upon such a discretionary matter should only be properly maintained in a case involving an allegation of discrimination based upon a suspect classification. Id. Since none is alleged by Gonzales, the petition for a writ of habeas corpus should be denied.

-9-

## **CONCLUSION**

For each of the foregoing reasons, the Petition for a Writ of Habeas Corpus should be denied.

                          Respectfully submitted,

                          D. MICHAEL FISHER
                          Attorney General

BY: _____
      **R. DOUGLAS SHERMAN**
      **Senior Deputy Attorney General**

      SUSAN J. FORNEY
      Chief Deputy Attorney General
      Litigation Section

Office of Attorney General
15th Fl., Strawberry Square
Harrisburg, PA 17120
(717) 787-1179

DATE: December 26, 2000

-10-

1997 WL 566080  
(Cite as: 1997 WL 566080 (E.D.Pa.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Donald WATKINS, Plaintiff,  
v.  
Martin HORN, et al., Defendants.

No. CIV.A. 96-4129.

Sept. 5, 1997.

MEMORANDUM

KELLY, J.

\*1 Before this Court is Defendants' Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Donald Watkins, a state prisoner, filed a pro se complaint, pursuant to 42 U.S.C. § 1983 ("Section 1983") against numerous officials and employees, in their official and individual capacities, at the Department of Corrections and the State Correctional Institution at Graterford, Pennsylvania ("Graterford"), seeking compensatory and punitive damages. Plaintiff alleges he was not fairly considered for reparole. For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

I. Background

On April 23, 1991, Plaintiff was sentenced to Graterford for several drug- related crimes. On February 11, 1994, Plaintiff was released on parole subject to certain conditions, as set forth in 37 Pa.Code § 63.4. On July 14, 1994, Plaintiff was arrested and later convicted on charges of terroristic threats and simple assault.

Subsequently, Plaintiff was returned to Graterford as a convicted and technical parole violator. On February 24, 1995, the Pennsylvania Board of Probation and Parole ("the Board") recommitted Plaintiff to prison to serve his original sentence. Plaintiff appealed that order, and, on September 30, 1995, he received notice of the Board's decision to modify the recommitment portion of the Board action of February 24 by removing reference to one technical violation ("condition 2"), "changing approved residence without written permission of parole supervision staff," and adding as an aggravating reason "assaultive offense while on parole." On November 14, 1995, Plaintiff was staffed for reparole consideration. Subsequently, Plaintiff appealed to the Commonwealth Court of Pennsylvania, contending that the Board abused its discretion in adding the aggravating reason and in not reducing backtime due to the elimination of one of the violations for which it was imposed. On October 31, 1996, the commonwealth court ordered that the Board's decision on administrative relief be vacated, and remanded the case for the reversal of backtime imposed for a violation of condition 2.

Plaintiff then filed the instant lawsuit, claiming violations of his substantive due process and equal protection rights, that his parole was rescinded and reparole denied in retaliation for exercising his right to appeal, and violations of the Ex Post Facto Clause, Res Judicata, Double Jeopardy, and the Eighth Amendment. On May 13, 1997, this Court issued a Memorandum Opinion and Order that granted in part and denied in part a motion filed by Defendants to dismiss Plaintiff's complaint. Defendants' Motion was denied with respect to Plaintiff's substantive due process and equal protection claims, but granted with respect to all other claims. On June 10, 1997, this Court issued another Memorandum Opinion and Order granting Plaintiff's Motion to Alter or Amend the Judgment, thereby reinstating Plaintiff's First Amendment retaliation claim. Defendants now move for judgment on the pleadings based upon qualified immunity. Additionally, Defendants Clymer, Horn, and James move for judgment on the pleadings because plaintiff has not alleged personal involvement on the part of these three defendants.

II. Standard

\*2 In a Motion for Judgment on the Pleadings, this Court will accept as true all well-pleaded allegations in the complaint and draw all inferences in favor of the non-moving party. Pennsylvania Nurses Ass'n v. Pa. State Educ. Ass'n, 90 F.3d 797, 799-800 (3d Cir.1996). Judgment will not be granted unless the movant clearly establishes that there is no material issue of fact to be resolved and that he is entitled to judgment as a matter of law. Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290 (3d Cir.1988).

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

EXHIBIT A

1997 WL 566080
(Cite as: 1997 WL 566080, *2 (E.D.Pa.))

Page 2

III. Discussion

Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court has held that an official is entitled to qualified immunity unless he knew or reasonably should have known that the action he took within his sphere of official responsibilities would violate the plaintiff's constitutional rights or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injuries. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The pleadings do not indicate (and Plaintiff does not argue) that Defendants' alleged actions were taken with the malicious intention to deprive Watkins of his constitutional rights. Therefore, this Court will apply the first standard to determine whether the Defendants knew or reasonably should have known that their alleged actions would violate the Plaintiff's constitutional rights.

This Court must examine whether or not the Plaintiff alleges the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The actions must be assessed in light of the legal rules that were clearly established at the time they were taken. Anderson, 483 U.S. at 639. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640.

A. Substantive Due Process

The Supreme Court has held that there is no constitutional right to parole or early release. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Despite the absence of a constitutionally protected liberty interest, this Court held that the Plaintiff had stated a substantive due process claim because he alleged that the Defendants had acted arbitrarily and capriciously. This holding was based, in part, on Block v. Potter, 631 F.2d 233 (3d Cir.1980). In Block, the Third Circuit held that, although there is no constitutional right to parole, substantive due process does give prisoners a liberty interest "in not being denied parole for arbitrary or constitutionally impermissible reasons." Block, 631 F.2d at 236. This holding was later reaffirmed by the Third Circuit in Burkett v. Love, 89 F.3d 135 (3d Cir.1996). These decisions were relied upon by another member of this Court in Jubilee v. Horn, 959 F.Supp. 276 (E.D.Pa.1997), which involved a Section 1983 claim nearly identical to the one at issue here. The Eleventh Circuit has also held that arbitrary and capricious action in denying a prisoner parole can violate due process. See Monroe v. Thigpen, 932 F.2d 1437 (11th Cir.1991).

*3 The precise issue before this Court now is whether a reasonable public official would have known that his or her specific conduct violated the Plaintiff's clearly established rights. Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir.1996). We agree with Defendants that Block and its progeny do not clearly establish the substantive due process rights that Plaintiff asserts for two reasons. First, other Courts of Appeals confronting analagous situations have held that such facts do not give rise to a substantive due process claim. See Johnson v. Rodriguez, 110 F.3d 299 (5th Cir.1997) ("It is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds"); Hill v. Jackson, 64 F.3d 163 (4th Cir.1995) (holding that Virginia prisoners had no liberty interest in parole release and, therefore, could not challenge parole board policies under the Due Process Clause).

Second, several recent Third Circuit decisions have held in different contexts that a substantive due process claim cannot be maintained in the absence of a constitutionally protected interest. In DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir.1995), a case challenging a zoning board decision, the court found that "to state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest." DeBlasio, 53 F.3d at 600. See also Indep. Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir.1997) (stating that in order to maintain a substantive due process claim grounded in an arbitrary exercise of governmental authority, the plaintiff must have been deprived of a

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

property interest); Homar v. Gilbert, 89 F.3d 1009, 1021 (3d Cir.1996) (holding that a plaintiff must have been deprived of a property interest in order to state a substantive due process claim).

Thus, there is substantial authority upon which Defendants could reasonably rely in believing that their alleged conduct did not violate Plaintiff's clearly established due process rights. Defendants are entitled to qualified immunity from Plaintiff's substantive due process claim.

B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment directs that similarly situated persons should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiff alleges that because of Defendants' arbitrary actions in conducting a parole review staffing, Plaintiff has not been afforded the same considerations as other similarly situated parole violators within Graterford's general population. In the Memorandum Opinion and Order issued May 13, 1997, this Court held that Plaintiff had stated a Section 1983 equal protection claim.

In so holding, this Court relied upon Brandon v. District of Columbia Bd. of Parole, 734 F.2d 56 (D.C.Cir.1984). In Brandon, a prisoner filed a similar pro se complaint seeking declaratory, injunctive, and monetary relief against the District of Columbia Board of Parole and its individual members for alleged violations of Section 1983. The plaintiff claimed, inter alia, that the Board's delay in considering his case, its failure to supply adequate reasons for its parole decisions respecting him, and its failure to reparole him in the same time period in which other similarly situated prisoners were reparoled violated his equal protection rights. The circuit court reversed the district court's dismissal of the plaintiff's claim, holding: "The defendants may be able to establish the rationality of treating plaintiff differently. But a court ought not dismiss an equal protection claim on the basis of reasons unrevealed to the court." Brandon, 734 F.2d at 60 (quoting Durson v. Rowe, 579 F.2d 1365, 1372 (7th Cir.1978)). Brandon was also relied upon in Jubilee, where the court held that the plaintiff's allegations of disparate treatment were sufficient to state an equal protection claim. Jubilee, 959 F.Supp. at 280.

*4 In contrast to Jubilee, this court has rejected equal protection claims by prisoners who claim they were denied privileges absent an allegation of class-based discrimination. See Rowe v. Cuyler, 534 F.Supp. 297 (E.D.Pa.1982), aff'd, 696 F.2d 985 (3d Cir.1983). In Rowe, a prisoner brought a Section 1983 action claiming he had been denied participation in a home furlough program while inmates with "deplorable institutional records" had participated in the program. Id. at 301. The prisoner did not allege discrimination based on his membership in a particular class. The court found that the plaintiff failed to state an equal protection claim, reasoning that "it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." Id. Defendants' Memorandum in support of this Motion cites two unpublished decisions following the reasoning of Rowe. See Carter v. Zimmerman, 1989 WL 64581 (E.D.Pa. June 12, 1989), aff'd, 897 F.2d 521 (3d Cir.1990); Bradley v. Jeffes, 1986 WL 6865 (E.D.Pa. June 18, 1986).

Based on Rowe and the cases following it, there is authority in this district that could lead Defendants to reasonably believe that their alleged conduct did not violate the Plaintiff's clearly established equal protection rights. Defendants are therefore entitled to qualified immunity from Plaintiff's equal protection claim.

C. Supplemental Motion

In order to be liable under Section 1983, a defendant must have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). There must be allegations that the defendant directly participated in, or had actual knowledge of and acquiesced in, the constitutional violations. Hodgin v. Roth, 536 F.Supp. 454, 460 (E.D.Pa.1982). The mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section 1983. Id.

Plaintiff alleges that Defendant Raymond Clymer,

1997 WL 566080
(Cite as: 1997 WL 566080, *4 (E.D.Pa.))

Page 4

the acting Department of Corrections Commissioner, failed to grant his appeal from final review of his grievance. He does not allege that Clymer in any way took part in the parole review process, nor does he allege that Clymer compiled, had access to, or contributed to any of the information used during Plaintiff's parole review process. The extent of Clymer's participation was that he concurred with the Central Office Review Committee's recommendation. This is not sufficient personal involvement to establish Section 1983 liability.

Plaintiff alleges that Defendant Martin Horn, Department of Corrections Commissioner, ignored Plaintiff's grievance and failed to correct inaccurate information "used in Plaintiff's parole decision process." The Commissioner of the Department of Corrections has authority over state correctional facilities, but does not personally handle the day-to-day management of each state correctional institution. In Rode, the plaintiff named the governor as a defendant when she brought an employment discrimination claim against the state police. The court held that the filing of grievances was not sufficient to show the actual knowledge necessary for a defendant to be personally involved in the alleged unlawful conduct. Rode, 845 F.2d at 1208. Thus, there are not sufficient allegations of Defendant Horn's personal involvement in the constitutional deprivations.

*5 Plaintiff alleges that Defendant Thomas James, Chief of the Department of Corrections Treatment Division, failed to remedy Plaintiff's situation. Plaintiff does not allege that Defendant James had any personal involvement in the alleged constitutional deprivations at issue here. See Payton v. Vaughn, 798 F.Supp. 258, 260 (E.D.Pa.1992) (holding that prisoner failed to state a cognizable Section 1983 claim where he could not show that supervisory officials were personally involved in deprivation of rights). Therefore, there are not sufficient allegations of Defendant James's personal involvement to maintain a Section 1983 claim.

IV. Conclusion

In summary, Defendants are entitled to qualified immunity on Plaintiff's substantive due process and equal protection claims. Despite the authority supporting this Court's decision that Plaintiff's allegations stated a claim upon which relief could be granted, there is sufficient authority which could lead Defendants to reasonably believe that their conduct did not violate Plaintiff's clearly established rights. Defendants' Motion for Judgment on the Pleadings will be granted on Plaintiff's substantive due process and equal protection claims. Defendants' Motion for Judgment on the Pleadings will be denied on Plaintiff's First Amendment retaliation claim. Additionally, the Supplemental Motion for Judgment on the Pleadings by Defendants Clymer, Horn, and James will be granted on all of Plaintiff's claims because Plaintiff has not made sufficient allegations of their personal involvement in the alleged constitutional deprivations.

An appropriate order follows.

ORDER

AND NOW, this 5th day of September, 1997, upon consideration of Defendants' Motion for Judgment on the Pleadings, and all responses thereto, and the Supplemental Motion for Judgment on the Pleadings of Defendants Clymer, Horn, and James, and all responses thereto, it is hereby ORDERED that:

1. Defendants' Motion is GRANTED in part and DENIED in part;

2. Defendants' Motion is GRANTED with respect to Plaintiff's claims that Defendants violated his rights of substantive due process and equal protection;

3. Defendants' Motion is DENIED with respect to Plaintiff's First Amendment Retaliation claim;

4. Supplemental Motion of Defendants Clymer, Horn, and James is GRANTED with respect to all of Plaintiff's claims.

END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR GONZALES,<br>          Plaintiff | : <br> : <br> :   Civil Action No. 1:CV-00-2061 |
| v. | : <br> : |
| BENJAMIN VARNER, et al.,<br>          Defendants | : <br> : |

### CERTIFICATE OF SERVICE

I, **R. Douglas Sherman**, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on **December 26, 2000**, I served a true and correct copy of the foregoing **Memorandum in Opposition to Petition for Writ of Habeas Corpus**, by causing it to be deposited in the United States Mail, first-class postage prepaid to the following:

    **Victor Gonzales, AY-1650**
    **SCI - Dallas**
    **1000 Follies Road**
    **Dallas, PA  18612**

                                                      **R. DOUGLAS SHERMAN**
                                                      **Senior Deputy Attorney General**